# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-0027V
Filed: September 20, 2019
UNPUBLISHED

| | |
|---|---|
| MELISSA BISHOP,<br><br>                 Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                 Respondent. | Special Processing Unit (SPU);<br>Findings of Fact; Onset;  Influenza<br>(Flu) Vaccine; Shoulder Injury<br>Related to Vaccine Administration<br>(SIRVA) |

*Shealene Priscilla Mancuso, Muller Brazil, LLP, Dresher, PA*, for petitioner.
*Traci R. Patton, U.S. Department of Justice, Washington, DC*, for respondent.

### FINDING OF FACT[1]

**Dorsey**, Chief Special Master:

On January 4, 2018, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*,[2] (the "Vaccine Act").  Petitioner alleges that she suffered left shoulder injuries as a result of an influenza ("flu") vaccine administered in her left shoulder on December 1, 2016.  Petition at 1.  The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] The undersigned intends to post this ruling on the United States Court of Federal Claims' website. **This means the ruling will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this unpublished ruling contains a reasoned explanation for the action in this case, undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, the undersigned finds that the onset of petitioner's shoulder injury related to vaccine administration ("SIRVA") occurred within 48 hours of vaccination.

## I.     Relevant Procedural History

On January 4, 2018, petitioner filed her petition and medical records (ECF No. 1). She filed a statement of completion on January 9, 2018 (ECF No. 5). Petitioner filed additional medical records on April 5, 2018 (ECF No. 9). On December 7, 2018, respondent filed his Rule 4(c) report asserting that petitioner had failed to establish entitlement to compensation for either a Table shoulder injury related to vaccine administration ("SIRVA") claim or a claim for shoulder injuries caused in fact by the flu vaccine (ECF No. 20).

On January 10, 2019, petitioner filed Petitioner's Exhibit ("Pet. Ex.") a detailed affidavit (ECF No. 22). On February 13, 2019, petitioner filed an expert report (ECF No. 23). On May 13, 2019, petitioner filed Pet. Ex. 15-18, including three witness affidavits, and a statement of completion (ECF Nos. 27-28). On June 26, 2019, respondent filed Respondent's Exhibit A, an expert report (ECF No. 29).

On July 17, 2019, the undersigned issued a scheduling order indicating that the parties could file additional evidence concerning onset by August 21, 2019, and that after that date the undersigned intended to issue a fact ruling on the issue of onset (ECF No. 30). No additional evidence was filed, and on August 21, 2019 petitioner filed an amended statement of completion stating the petitioner "now believes all relevant medical records have been filed in this matter" (ECF No. 31).

## II.    Issue

At issue is whether petitioner's first symptom or manifestation of onset after vaccine administration was within 48 hours as set forth in the Vaccine Injury Table. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination). Additionally, the Qualifications and aids to interpretation ("QAI") for a Table SIRVA requires that a petitioner's pain occur within this same time frame, 48 hours. 42 C.F.R. § 100.3(c)(10).

## III.   Authority

Pursuant to Vaccine Act § 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act § 11(c)(1). A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Vaccine Act § 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the

evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Vaccine Act § 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Curcuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

### IV.  Finding of Fact

The undersigned finds that the onset of petitioner's injury occurred within 48 hours of her December 1, 2016 flu vaccination (Pet. Ex. 1 at 1). The undersigned makes this finding after a complete review of the record to include all medical records, affidavits, expert reports, respondent's Rule 4 report, and additional evidence filed. Specifically, the undersigned bases the finding on the following evidence:

- Pet. Ex. 2 at 11, a record of petitioner's March 9, 2017 visit with nurse practitioner Dewayne Steffey documenting pain in her "left arm triceps where she had a flu shot. She never had pain in it prior to the shot." On examination, petitioner was found to have musculoskeletal joint pain with range of motion and limited range of motion in her left acromioclavicular joint. *Id.*

- Pet. Ex. 2 at 8, a record of petitioner's April 6, 2017 visit with nurse practitioner Dewayne Steffey documenting that petitioner was "having difficulty lifting her left arm since she had a flu shot last December. The arm is painful and cannot be lifted very high." On examination, petitioner's left shoulder joint was unable to flex past 45 degrees. *Id.*

- Pet. Ex. 4 at 1, a record of petitioner's April 14, 2017 left shoulder MRI, documenting the reason for the MRI as "[l]eft shoulder pain after flu shot in December." The MRI findings included minimal fluid in the shoulder joint and subacromial subdeltoid bursa, mild thickening of the coracohumeral ligament with mild edematous changes in the rotator cuff, minimal tendinopathy of the supraspinatus tendon, and findings suggestive of adhesive capsulitis. *Id.*

- Pet. Ex. 8 at 2, a record of petitioner's May 23, 2017 appointment with Dr. Linda Pearson noting the petitioner "had the flu injection in December 2016 and had complications since then with the left shoulder and arm."

3

- Pet. Ex. 5 at 35, a record of petitioner's May 24, 2017 physical therapy initial evaluation noting a "5 month history of constant left shoulder pain and stiffness of varying intensities following her flu shot in December." The evaluation listed the mechanism of injury as "flu shot." *Id.*

- Pet. Ex. 6 at 2, a record of petitioner's June 6, 2017 appointment with Dr. Jeffery France, noting that petitioner "had an injection in her left shoulder for flu in December 2016. It hurt and she kind of held it still and it has gotten stiff." On examination, Dr. France found that petitioner had "greatly decreased abduction, external rotation." *Id.*

- Pet. Ex. 13 at ¶ 2, petitioner's detailed affidavit, noting that on December 1, 2016 when the vaccine was administered, "it burned and hurt. Immediately following vaccination, I felt pain in my left shoulder. The pain and burning continued to hurt after she administered the shot . . . .When I first received my injection, my range of motion was affected . . . . Later on that night my left arm and shoulder was still sore. I started taking Tylenol the day of vaccination for pain."

- Pet. Ex. 16 at ¶ 3, affidavit of petitioner's spouse David Bishop, stating that he accompanied her to the appointment where she received the flu vaccine and that when she returned to the lobby, she told him that the shot "hurt and burned immediately when the nurse had given it to her."

The above medical entries and affidavit evidence show that petitioner's pain began within 48 hours of her flu vaccination. In this case, the medical records document that petitioner sought medical care for her shoulder injury three months following the vaccination. The undersigned has found onset within 48 hours to be established in cases with longer delays in seeking medical care than this.

A delay in seeking care is not uncommon in SIRVA cases and is not dispositive. *See Cooper v. Sec'y of Health and Human Servs.*, No. 16-1387V, 2018 WL 1835179, at *6 (Fed. Cl. Spec. Mstr. Jan. 18, 2018) ("the undersigned does not find a delay in treatment of several months to be dispositive in and of itself regarding the question of onset in a SIRVA case such as this"); *see also Ray v. Sec'y of Health and Human Servs.*, No. 16-1388V, 2018 WL 7051571, at *6 (Fed. Cl. Spec. Mstr. Dec. 17, 2018) (*citing Cooper*). The Vaccine Act "does not mandate that the time of first onset be determined by the earliest entry" in the medical records. *Lopez v. Sec'y of Health & Human Servs.*, No. 90-12V, 1990 WL 293414 (Cl. Ct. Spec. Mstr. Dec. 10, 1990).

In *Tenneson v. Sec'y of Health & Human Servs.*, No. 16-1664V, 2018 WL 3083140 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), petitioner did not seek treatment for her SIRVA for nearly six months after vaccination. After vaccination and before seeking treatment for her shoulder, the petitioner in *Tenneson* made calls to her primary care provider and visited the emergency room for an unrelated condition. After a thorough review of the records, the undersigned in *Tenneson* found that this delay did not

establish that the onset of pain was not within 48 hours of vaccination. The undersigned explained that the "fact that petitioner delayed seeking treatment for her shoulder symptoms does not negate the value of her treatment records or render this evidence not credible, although it may speak to the severity of her injury." *Id.* at *5. Respondent argued that the fact that petitioner's shoulder condition was not mentioned at these times meant that the shoulder pain began three to six months following vaccination. The undersigned rejected this argument.

In this case, respondent emphasizes that petitioner had medical appointments for pain on January 10, 2017, six weeks after vaccination, and February 9, 2017, ten weeks after vaccination, and did not report shoulder or arm pain. Respondent's Rule 4(c) Report at 8. The records of the January 10, 2017 (Pet. Ex. 2 at 16-18) and February 9, 2017 (Pet. Ex. 2 at 13-14) visits do not specifically mention a shoulder injury. Respondent infers that because a shoulder injury is not mentioned in the medical records, petitioner had not suffered a shoulder injury at the time of these visits and, therefore, petitioner has not established that the onset of her shoulder pain occurred within 48 hours of her vaccination.

The record of petitioner's January 10, 2017 appointment indicates that she was diagnosed with fibromyalgia in 2007 and had low back pain since she was a teenager. Pet. Ex. 2 at 17. Diagnoses recorded for this visit included hypertension, gastro-esophageal reflux disease, fibromyalgia, major depressive disorder, migraine, osteoarthritis, and low back pain. *Id.* at 17-18.

In her detailed affidavit, petitioner explained, "January 9, 2017[3] was my first visit with Dr. Steffey; I was a new patient . . . . He was asking me a lot of questions since it was my first visit with him. And of course being a new patient I was very tired from all the wait and from all the questions and so forth. And I just wanted to hurry up and get out of there that day, so I just didn't mention my left shoulder issues." Pet. Ex. 13 at ¶ 8.

With respect to the February 9, 2017 visit, petitioner states, "I remember saying something to Dr. Steffey about my arm. It was at the end of my appointment with Dr. Steffey as I was leaving . . . . He must of wrote it down at the end of my appointment, because in his notes it does say at the end 'she now has the other complaints,' which I believe is about my arm. I don't know why he did not specifically note my arm complaints in the February 9, 2017 record." Pet. Ex. 13 at ¶ 9. Petitioner is correct in noting that the record of her February 9, 2017 appointment states, "[s]he now has the other complaints." Pet. Ex. 2 at 14.

The undersigned finds that the fact that the records of petitioner's January 10 and February 9, 2017 appointments do not mention her shoulder pain does not establish that the shoulder pain did not exist on that date, although it may speak to the severity of her injury. *See Tenneson*, 2018 WL 3083140 at *5. The undersigned finds petitioner's explanation concerning the January 10 visit to be supported by the medical record noting the numerous conditions with which she was diagnosed. Further, her

---

[3] This appears to be a reference to the January 10, 2017 appointment recorded in Pet. Ex. 2 at 16.

5

explanation concerning the February 9 visit is supported by the note indicating that she "now has the other complaints" in the record of that visit.

Moreover, when petitioner did seek treatment for her arm/shoulder injury, she repeatedly and consistently reported experiencing pain since receiving the vaccine and related her symptoms to her vaccination. *See, e.g.*, Pet. Ex. 2 at 8 (reporting during an April 6, 2017 appointment that her arm was painful and difficult to lift since her flu shot in December); Pet. Ex. 8 at 2 (record of May 23, 2017 appointment where petitioner reported that she "had the flu injection in December 2016 and had complications since then with the left shoulder and arm"); Pet Ex. 5 at 35 (May 24, 2017 physical therapy initial evaluation noting that petitioner had a five month history of left shoulder pain and stiffness following her flu shot in December); and Pet. Ex. 6 at 2 (June 6, 2017 record of appointment indicating that petitioner had a flu shot in December 2016 that hurt").

Based on the undersigned's review of the record as a whole, in particular the portions cited herein, the undersigned finds that petitioner has established, by a preponderance of the evidence, that the onset of her shoulder pain occurred within 48 hours of her December 1, 2016 flu vaccination.

### V. Scheduling Order

In the Rule 4(c) report, respondent contested entitlement on other grounds, and both parties have filed expert reports. The undersigned determines that the proper course is for the parties to consult with one another and discuss how they believe this case should proceed.

Accordingly, IT IS ORDERED THAT:

- **Petitioner shall file, by <u>Monday, November 04, 2019</u>,** a joint status report indicating how the parties wish to proceed in this case. A status conference may be requested if the parties believe it would be helpful.

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u>
Nora Beth Dorsey
Chief Special Master
